REQUESTED BY: Senator Jerome Warner Nebraska State Legislature Room 1000 State Capitol Lincoln, Nebraska 68509
Dear Senator Warner:
In connection with your proposed amendments to LB 173, 87th Legislature, First Session (1981), which deals with the granting of conservation or preservation easements upon real estate, with certain conditions thereon, you have asked whether language in the bill conditioning such easements upon approval of the granting thereof by certain governmental bodies would be an unreasonable restraint upon alienation. You also inquire if your proposed amendments would remove the restraints, if any.
We are inclined to agree that the approval provision of subsection (2) of section 2 of the bill might be construed to be unreasonable restraint since no guidelines are provided, thus leaving discretion over granting or denying approval unrestricted. We feel that your proposed Amendment #1 is an improvement, since the last sentence thereof does provide some guidelines. We do feel, however, that the language of Amendment #1 would be even less subject to attack if the language of that last sentence read `that approval could be denied if the easement was inconsistent with the comprehensive plan for the area which had been officially adopted and was in force at the time of the conveyance.' Also, the last clause `or as otherwise not in the public interest' should probably be deleted for the same reason.
Proposed Amendment #2, does away with the concept of approval altogether. It merely provides a `cooling off period' together with an opportunity to comment, which would not be binding on the parties to the conveyance. We are unable to see an unreasonable restraint upon alienation.
Your second question has to do with subsection (1) of section 3 of the bill, which allows all holders of such easements, except charitable corporations or trusts, to release such easements. Since charitable corporations are, or can be authorized by law to hold and convey property, it is thought that the singling out of charitable corporations or trusts as the only entities not having the power to release these easements raises the constitutional question of proper or improper classification, and would probably result in a finding of unconstitutionality. Your question is whether the removal of the language which singles them out would strengthen this section against possible attack, and we believe that it would.
Your remaining questions have to do with the tax consequences to the grantee or donee in the instrument creating the conservation or preservation easement. We are not at all sure that there would be consequences. A normal easement gives the grantee or owner of the dominant estate certain rights of use in and to real estate constituting the subservient estate. The conservation and preservation easements contemplated in LB 173 are, rather, negative easements or restrictions on use. We do not see any use of a subservient estate by the grantee of the easement, but only a restriction upon the use of the land by its owner, the grantor. Thus, if the instrument creating the easement does not create a use or right of use of the grantee, it would appear to be a moot point to discuss whether that which is created by the instrument is used exclusively for educational, religious, charitable, or cemetery purposes.
Most of such negative restrictive easements have been acquired by governmental agencies, with the question of tax consequences to the grantee not arising. We do believe, however, that an analogy may be drawn between such negative restrictive easements and restrictive covenants.
Restrictive covenants are limitations placed upon the use of real estate by the grantor when real estate is conveyed away. These negative restrictive easements are, on the other hand, conveyed away by the owner of the property.
Despite the difference in the mechanics of creating the restrictions, we believe the effect of both types of transactions is the same.
And we know of no instance of a grantor placing restrictive covenants upon property he is selling having been held to have to pay property tax upon the restrictions, unless they specifically benefit some other land.
Very truly yours, PAUL L. DOUGLAS Attorney General Warren D. Lichty, Jr. Assistant Attorney General